319-0529-WC, Todd Wernberg, Appellant versus the Workers' Compensation Commission, George Young and Sons Athlete. Mr. Young, you may proceed. I just lost my picture. Wait, you're there. Yeah, but I've lost the picture. I can't see you. It's minimized probably. What's that, Pete? If he can hear it, it's probably just minimized. So he's still with us. He just needs to pull back up the screen. I saw it. I got it. You're right. Okay, we're all in visual and audio, everyone. Okay. Hold on one second. Okay. Okay, I'm in business. Okay, very good. Mr. Young may proceed. If you may please the court. Counsel, my name is Damon Young. I represent the appellate employee, Todd Wernberg, in this case. The commission found Mr. Wernberg failed to prove accidents specifically they found he was not credible. First, I contest that the credibility finding was against the manifest way of the evidence. And second, certain evidence that was considered to discredit Mr. Wernberg should not have been considered. And the evidence your ruling was clearly erroneous. So I'm gonna start with three items in regards to his credibility. One is the direct exam, the cross examination, and the medical records themselves. In regards to the direct examination, I think Mr. Wernberg testified consistently and credibly that he had an accident on May 12th, 2015 when he was lifting a piece of steel. He then the next day went to UnityPoint Health, got immediate medical attention, complaining of hip, low back and leg pain. And then he followed up on May 20th and then it was discussed that he had a work accident and he was sent to the employer's occupational medicine facility. After this point forward, there was a little bit of an issue with his diagnosis. They accidentally diagnosed him with a hernia bilateral. He actually had surgery July 2nd, 2015 and found that there was no hernia. So let me go back to what your original point was. This is a case in which the commission specifically found that your client was not credible and they delineated specific reasons, is that correct? That is correct. And one of the reasons is you just attempted to answer it. You believe he testified credibly on direct examination and the commission noted that he testified directly and easily on direct examination. However, on cross examination, not only did they find he was evasive, but he couldn't even remember speaking to Dr. Bernstein. He couldn't remember that he had a motor vehicle accident in 2006 and whether or not he treated for back pain in 2011. So that was one of the things that they based a credibility finding on is that he correctly and easily answered questions on direct and all of a sudden seemed to have these memory lapses on cross. Right. I think if I recall with Dr. Bernstein, it became a question, did he discuss the prior back problems or not? But yes, he did have some issues in regards to some facts that predated the accident by several years. One was a motor vehicle accident. The other was an altercation with his neighbor, but all those facts entailed his low back problems and treatment at that time. And he did state consistently during direct examination, he did have prior back problems, that he did have prior treatment. In the 2013, he was released. And from that point forward, he didn't have any issues with his low back. So while he didn't remember the specific issues in regards or the specific facts of how he hurt his back on cross examination, he was clear that he had prior back problems in his testimony and that he got treatment for them at around the time of these facts. How would you explain why he couldn't remember who Dr. Bernstein was? Well, I mean, I guess he went to Dr. Bernstein one time, several years before he testified. And I think once it was described as the respondent's doctor, the IMU doctor, he did a little bit better in regards to the, who he was in his testimony. And yes, he had a difficult time recalling some certain facts in the case, but there was no time during this period on cross examination. Did he say those items never happened? He just said he didn't recall them. All right, the commission specifically mentioned something that I do find a little bit intriguing. With regard to him applying for work within the scope of his qualifications as a union painter, he applies for jobs as a pilot, a news anchor, and a meteorologist. What's up with that? Well, okay. As far as the jobs that he did do, he applied for literally hundreds of jobs. And there were four or five instances where he did put in a couple positions that he wasn't qualified for. Was it his attempt at a joke, stupid joke, or something that he shouldn't have done? Yes. But I mean, if you take the totality of a job search and boil it down to three or four or five jobs that he shouldn't have applied for, I don't think it's fair to find it was not credible based on that situation. I mean, a pilot obviously didn't have a pilot's license. CEO, I think of a company, obviously he doesn't have the qualifications of that. But just to say that he's not credible because he was being silly or stupid on three or four job searches, I don't think it is fair or even I guess manifest way of the evidence. I understand that argument, but again, they also based it on his manner in testifying and how invasive he was and the things that he forgot. But go on with your argument. Okay. And then also something to note that Eric Young was his supervisor. His supervisor even testified that he had an accident and actually witnessed the accident. And the arbitrator, the commission stated he was not credible because he could not remember what day he went for treatment, but his accident story was consistent with Mr. Wernerberg's at trial. And so I think if you take Mr. Wernerberg's and the witness Eric Young's supervisor's testimony together it was clear that he was lifting a piece of steel and injured his whole back. And as far as the medical treatment records themselves, the real issue comes down to the arbitrator and then later the commission had problems with is about the first two and a half weeks of treatment. He does go to treatment the next day, May 13th of 15 and there is no history whatsoever in that treatment record either way. It does say in the x-ray, no trauma. He does follow up on May 20th of 15 and states it wasn't work related to the staff, but then tells the doctor that actually he did have a work accident and the low back condition is related to that accident. So you got some inconsistency there, correct? I'm sorry, what's that? You got some inconsistency there between what he told the staff and what he told the doctor. Yes, according to the records there is an inconsistency there, yes. And I think, but if you take the entire three weeks of treatment, it's obvious that from those records that he did tell them that there was a work accident and that there was issues with his low back because of it. But I will admit the May 13th of 15 visit and the May 20th of 15 visit, one, the 13 didn't give a work accident history and 20, he had two different, according to the records, two different versions of what happened. And then another medical record was the April 23rd of 15, a week before or about three weeks before the accident. He did go to the doctor and say he was having hip problems due to a workout program that he was on, but he disclosed that and was forthright on that on direct examination that he had that appointment, that he went there, that it was a completely different pain and that was disclosed on direct examination. And then my second point is that the questioning of all that discussed or asked about this theft charge slash conviction, and the question was asked, did you have a theft conviction? And the petitioner employee stated that he did not recall. At that time, I objected to the question that it was improper. And what did you base your objection on? What grounds? Well, relevancy, foundation, and improper impeachment. Well, if you object on relevancy grounds and that's not the correct objection, you've just, you've waived it. You've waived it. You understand that? I'm sorry, what's that? If you object on relevancy grounds, okay, and you're not any more specific, then you've got a forfeiture issue. I had multiple reasons on the objection as to why this shouldn't have been, and I did elaborate in my objection in regards to improper impeachment because there was no proof that there was a felony conviction or a conviction with a misdemeanor involving dishonesty with that fact pattern. So how much weight, assuming that there was a problem with the commission's ruling at the moment, let's take a moment until we look at it closer, how much weight did the commission place on that anyway? Well, the arbitrator who wrote the decision adopted by the commission specifically wrote perhaps the most significant item in her finding with credibility was a 2010 guilty plea of theft. That's what she wrote in the decision. And based on that statement, I think a substantial amount of weight was given to that conviction that wasn't even proven at trial, that there was even a conviction. But nevertheless, as you recognize, in terms of the general is the credibility of the witnesses and the weight to be given to the testimony and evidence is within the province of the commission, you're aware of it. Yes, your honor. Let me ask you about the medical evidence. You clearly have O'Leary testifying in your client's favor, but you also have Bernstein on the other side with a contrary opinion. So where does that leave you? Well, as far as medical causation, I don't think there was a ruling placed on that. It was just my client wasn't found credible and failed to prove accident in the case. I think also if the felony or theft charge was allowed in, there should have still been a probative value test to see if it's a substantially outweighed the probative value versus the danger of unfair prejudice. And none of that was completed in trial at the time of question.  the arbitrator is the one who has the right to do so. Didn't rest on the fact that he was convicted for a theft. The arbitrator rested on that. He said he couldn't remember whether he was convicted for a theft. I'm reading from the decision right now. He couldn't remember a number of things. And then she turns around and says, and perhaps the most significant, whether or not in 2010, he pled guilty to a theft charge. It was his inability to remember that she found to be lacking in credibility. Wasn't decided on that he was convicted of theft. This guy answered, I don't remember everything. Well, yeah, well, I contended that was an improper question to ask because of the type of question in regards to the theft charge or guilty plea is what was stated in the sentence. And there was none of that proven at trial. Well, isn't that- I think it was improper question and should have been sustained on that objection. Are you thinking that, Justice Hoffman, I think is saying that you can look at this as he couldn't remember his mother's name as to his ability to recall events that presumably would have significance. Whether he was convicted, pled guilty or whatever, that isn't the essence of the question. Is that a fair statement, Justice Hoffman? Yeah, he was asked whether he was convicted of a theft or pled guilty to a theft in such and such a year. And he said, I don't remember. No. Unless the guy is a serial criminal, I don't think the average person would forget whether they pled guilty to a theft. Well, okay, I guess when I read the law, I don't think that you can ask the question to see if they remember it. If they don't, it automatically comes in. I think if you're going to impeach somebody on a prior criminal matter, I think you have to lay the foundation to do that. You're still missing the point. We can make a third try. What they are saying is, she didn't find that because he was convicted of theft, that his credibility was impaired merely by that. It was just a final thing in a series of questions when he couldn't remember obvious things. He seemed very evasive and not truthful and candid in his answers. That's the problem. Not that he was convicted of it, that he couldn't remember. Does that make any sense to you? No, it does, Your Honor. I understand the separation there. I'm just arguing that if you're allowed to bring that up with no foundation, or not asking the question properly, and then if they say they don't remember, because we don't even know if this actually even took place. We just know that this was a question asked. So what we're saying is that, well, if you just ask it and if they don't remember, well, then it can be held against you when this is a situation where there was, it was not even proven this actually happened. Well, you wouldn't have to prove it actually happened until he denied it. Right, exactly. And then you've got to complete the questioning and lay the foundation and impeach him with proof that he was. But in this particular case, he said, I don't remember. And I think what the arbitrator is saying is, how can you not remember if you were convicted of theft? If you weren't, you say you weren't. If you were, you say you were. They didn't have, there was nothing for them to tie up. Mr. Young, I see that the red light appears to be on in that screen. It looks red anyway. And so you'll have time and reply. Thank you, your honor. Okay, thank you. Mr. Hoffman, you may respond. Thank you, your honors. My name is Bob Hoffman. I represent George Young and Sons in this matter. It's our position that the decision of the arbitrator as affirmed by the commission is not against the manifest way to the evidence. The question here isn't whether or not the five of you would have ruled differently. The issue here is whether or not there is evidence in the record to support the commission's decision. And it's our position that there is. The commission has the duty to weigh the evidence and the commission has the duty to weigh and determine the credibility and the amount of weight to be given to specific evidence. If you look at the chronology of the facts here, the problem we have, the problem that the commission had here as did I, is the petitioner was very lucid when his attorney was asking him questions. But when I asked him questions, it was a litany of, I don't remember, I don't recall. It's not like that. The other problem we have with his evidence is I disagree with Mr. Young's assessment. The medical records don't support the story that this gentleman told. First off, there was the 2006 motor vehicle accident that he didn't recall. There was an altercation in March of 11 where he injured his back. He didn't testify in detail about it. The records that were introduced say that he went to a chiropractor, but those records weren't introduced. He was treated on two occasions in 2012 for back problems, once by, which I found really significant, by Dr. Sereca, who is a partner of Dr. O'Leary. The petitioner had injections by Dr. Sereca, and the petitioner said he didn't remember getting injections in his back. This is one of those things that in my experience, people remember that sort of thing. And when the petitioner testified that he doesn't even recall this going on, it really puts a real spotlight on his credibility. He had problems in late March of 2015, two or three weeks before the alleged accident, at which time he was told that if he's having problems to come back in two or three weeks. Well, two or three weeks is about March 12th, or about, excuse me, May 12th, when he went in for x-rays. That would explain why there's no history there, especially when the records indicate that within those x-rays that there was no trauma. Which would also contradict the petitioner's testimony. And I do also disagree. I'm not sure how much weight Mr. Young's testimony does to corroborate his story. As I read his testimony and heard him testify, it sounds to me like he didn't see anything, but he was testifying that the petitioner reported something to him. But then the petitioner says, I went to the doctor the next day, and Mr. Young disputed that and said, he picked me up at my house when we went to work. And then Mr. Young said that after several days, he said, hey, you better go get treatment. And then when he does go get treatment on May 20th, his initial history is, I didn't have an accident, this happened at home. And it's only when he's told that he has a hernia and needs surgery, that the man changes his story and says, I hurt myself at work. And this change was so drastic that even the treaters made comment on it in their records. After this initial treatment, which has not been commented on at all, is in June through July or August, the petitioner treated at IWIRC, the petitioner put these records in, the treatment there was all for back problems. And those records clearly indicate that the back problems are not work related. And when counsel says that he gave a consistent history to Dr. O'Leary, I just have to scratch my head. Dr. O'Leary testified that the petitioner didn't tell him about any prior problems. And what I find more disturbing in Dr. O'Leary's testimony is admission that he never looked at the records from his own, on this patient from his own practice. So we have somebody who's treating somebody without taking a thorough history, without reviewing his prior records from this, in his own facility. I find Dr. O'Leary's testimony to be highly suspect, as apparently the commission did. And then as has been pointed out, when he goes to see my independent medical examiner, Dr. Bernstein, again, the testimony of Dr. Bernstein, his evidence deposition was, I asked him if he had any prior problems and he said, no. And he initially said that as based on that, that this could be work related, but then when he was informed of the prior problems, he said, no, this guy is, this guy's problems are not work related. If one looks at all the evidence, it's clear that the commission had reasonable grounds to find the petitioner lacking in credibility, to find Dr. O'Leary's opinions lacking in credibility. And therefore there is, this decision cannot be deemed to be against the manifest way to the evidence. I have nothing else to add other than to apologize. I tried desperately to get the background behind me, but when I got it in, it showed me as a disembodied head. And I didn't think you guys would want to look at just a head That's so fine with Dr. Hoffman. Thank you. Thank you. Mr. Young, you may respond or reply. Just to reiterate the focus or the testimony that the petitioner had trouble with were not at around the time of the accident nor after the accident with his medical treatment. It all involved, I have 10 years ago prior that he did not have a recollection, but the meat of those questions from 2006, 2011 was his prior low back problems. He admitted on direct examination later on across that he did have prior low back problems that he got past those and didn't have any issues. Where he had, so all the credibility issues that the employer's arguing has something to do with five or 10 years before the accident for conditions that he had already admitted to. So overall, I think his credibility should have been found credible. And taking the case as a whole, I think that the credibility of the petitioner employee should have been found credible. And with all the facts it is against the maximum best way to the evidence to find him that credible. Okay, thank you counsel both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue.